IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00708-REB-MEH

ANTHONY D. LOCKE,

      Plaintiff,

v.

FEDEX FREIGHT, INC.,
CARL PETERMAN,
JEFF W. STAMM,
BILL LOFTUS,
BOB MORELAND,
TONY TALIERCIO, and
JON S. JONES,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

      Before the Court is Defendant Jon S. Jones' Motion to Dismiss Plaintiff's First Amended

Complaint [filed June 6, 2010; docket #24].  Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo.

LCivR 72.1C, the matter is referred to this Court for recommendation [docket #25].  The motion is

fully briefed, and oral argument would not materially assist the Court in its adjudication.  For the

reasons that follow, the Court respectfully recommends that Jones' Motion to Dismiss be **denied**.[1]

_____

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file
any written objections in order to obtain reconsideration by the District Judge to whom this case is
assigned. Fed. R. Civ. P. 72(b).  The party filing objections must specifically identify those findings
or recommendations to which the objections are being made.  The District Court need not consider
frivolous, conclusive or general objections.  A party's failure to file such written objections to
proposed findings and recommendations contained in this report may bar the party from a de novo
determination by the District Judge of the proposed findings and recommendations.  *United States
v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file
written objections to the proposed findings and recommendations within fourteen (14) days after
being served with a copy may bar the aggrieved party from appealing the factual findings of the

# BACKGROUND

### I.   Procedural History

Plaintiff, Anthony Locke, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), to the Colorado Anti-Discrimination Act ("CADA"), and to 42 U.S.C. § 1981 ("Section 1981"), asserting retaliation, harassment, disparate treatment and discrimination on the bases of race, color and religion.  Plaintiff, proceeding *pro se*, initiated this suit on March 21, 2012, and filed the operative First Amended Complaint on May 22, 2012.  (*See* dockets ##1, 18-1.)

The Court notes that the parties filed a Stipulation on June 29, 2012 in which they agree that the only claim Plaintiff seeks to assert in his Amended Complaint is his Section 1981 claim.[2]  The Court accepts the Stipulation as agreed and construes it as Plaintiff's notice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) that Plaintiff dismisses his Title VII and CADA claims.

For his Section 1981 claim, Plaintiff, an African-American, alleges generally that all Defendants created a hostile work environment and treated him disparately in terminating his employment, and that Defendant Peterman harassed and retaliated against Plaintiff following his complaints about the harassment.  (Amended Complaint, docket #18-1 at 4-6.)

Defendant Jon Jones filed the present Motion to Dismiss in response to Plaintiff's Amended

---

Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

[2]"[A]n individual employee can be held liable under § 1981 if there is an underlying employment contract and the individual employee was personally involved in the alleged racial discrimination."  *Flores v. City & Cnty. of Denver*, 30 F. App'x 816, 819 (10th Cir. 2002) (citations omitted).

Complaint, arguing that Plaintiff's claims against him should be dismissed for (1) insufficient service of process; (2) failure to plead adequate personal jurisdiction; and (3) failure to state a claim upon which relief can be granted.  (Motion, docket #24 at 2.)  Jones' third basis for dismissal refers only to Plaintiff's Title VII claims; in light of the subsequently filed Stipulation and notice of dismissal, however, this basis has become moot.  (*See* Stipulation, docket #26 at 1, n. 1; Reply, docket #37 at 1.)  Therefore, the Court will analyze Jones' first and second bases only.

Jones argues that Plaintiff's only attempt at service upon him occurred on April 9, 2012 at the FedEx Freight facility in Henderson, Colorado.  (Motion, docket #24 at 3.)  However, according to Jones, he lives in Arkansas and formerly worked for FedEx Freight in Florida; therefore, service was insufficient.  (*Id.*)  Further, Jones contends the Plaintiff fails to make any assertion concerning personal jurisdiction and that this Court has no personal jurisdiction over him in this matter.  (*Id.* at 4.)

Plaintiff counters that, by responding to the Amended Complaint as a client of an attorney, Jones "admitted" jurisdiction of this Court.  Further, Plaintiff argues that Jones' contacts with Colorado are sufficient to meet the "minimum contacts" test for personal jurisdiction.  Plaintiff also asserts that his allegations of Jones' commission of a tortious act suffice to impose personal jurisdiction upon Jones.  With respect to service of process, Plaintiff contends that Jones' attorney received a copy of the summons and complaint, which is enough to demonstrate sufficient service of process.

Jones replies that the fact his counsel ultimately obtained a copy of the Complaint does not satisfy the service requirements of Fed. R. Civ. P. 4(e).  Further, Jones argues that Plaintiff's Section 1981 claim does not constitute a "tort" for purposes of determining personal jurisdiction. Jones also

3

stands on his original arguments concerning lack of personal jurisdiction.

## II.    Statement of Facts

The following are factual allegations made by the Plaintiff in his Amended Complaint and offered by Jones for jurisdictional analysis.  These allegations are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).

Plaintiff Anthony D. Locke is an African-American male formerly employed as a commercial driver for Defendant FedEx Freight, Inc.  Defendant Jon S. Jones was the "Manager Director Line-Haul Operations."  Plaintiff was a line haul driver responsible for the safe transport of customer freight over long distances in a commercial motor vehicle (a/k/a tractor-trailer or "semi"), consistent with Department of Transportation regulations governing the drivers of commercial motor vehicles and FedEx Freight safety policies.

Plaintiff alleges that Defendant Carl Peterman made numerous insults and offensive jokes toward his race and religion.  Plaintiff complained repeatedly to Defendants Loftus, Stamm, Moreland, Jones and Tallierco, but his complaints were ignored.  Specifically, on March 8, 2008, Plaintiff wrote a letter addressed to the Office of Bob Simons in Lakeland, Florida, in which he describes "racial remarks" made by Defendant Peterman and states he "did report this event and others to Bob Moreland, Tony Taliercio, Jon S. Jones and Mary Knotts."  (Docket #18-2 at 24.) Plaintiff further alleges Defendant Peterman continued his bad conduct, including conspiring with other employees to get Plaintiff terminated.  At no time were FedEx procedures followed to cure Plaintiff's allegations of racial remarks by Defendant Peterman.  Plaintiff's work environment became such that he feared violence would occur due to Defendant's conduct.  Plaintiff felt helpless

4

after receiving no responses by upper management to resolve the conflict between Plaintiff and Defendant Peterman.

Plaintiff was terminated from his employment effective July 25, 2008 purportedly for safety violations. (Docket #18-2 at 19.)

Defendant Jones lives in Ozark, Arkansas, has never lived in Colorado, and possesses no real property or bank accounts in Colorado. Jones was employed by FedEx Freight in Lakeland, Florida through April 11, 2012. During all times relevant to the Complaint, Jones was the Manager of Linehaul Field Operations, then Senior Manager of Contractor Affairs. He had no office nor staff who reported to him in Colorado. In 2008, Jones made 2-3 visits to Denver and Rifle, Colorado, but none of the visits involved the Plaintiff.

On April 9, 2012, Jones was not provided a copy of the Summons or Complaint that was sent to the Henderson, Colorado facility by the Plaintiff. Jones has not been personally served with the Summons and Complaint and there has been no service at his home.

## LEGAL STANDARDS

### I.      Treatment of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor

syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## II.   Dismissal under Fed. R. Civ. P. 12(b)(2)

"Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.

*Wenz*, 55 F.3d at 1505 (citations and internal quotation marks omitted).

"Jurisdiction to resolve cases on the merits requires ... authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)). "In determining whether a federal court has personal jurisdiction over a defendant, the court must

determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (internal quotation marks and citation omitted).

Where the federal statute at issue does not authorize nationwide service of process, a court may assert personal jurisdiction "to the extent allowed by the state in which the district court sits." *SCC Communs. Corp. v. Anderson*, 195 F. Supp. 2d 1257, 1260 (D. Colo. 2002).  The statute by which Plaintiff brings his claims, 42 U.S.C. § 1981, does not confer nationwide service of process. *Dudley v. North Central Reg'l Office*, No. 09-2027-JWL, 2009 WL 2914104, at *2 (D. Kan. Sept. 8, 2009); *see also Trujillo*, 465 F.3d at 1217 (stating that 42 U.S.C. § 1983 does not confer nationwide service of process or jurisdiction upon federal district courts)).  Therefore, Rule 4(k)(1)(A) governs this Court's authority to exercise personal jurisdiction over Defendant Jones as an out-of-state defendant. Rule 4(k)(1)(A) provides that "[s]erving a summons ... establishes personal jurisdiction over a defendant ... (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."

"Since in personam jurisdiction of a state court is limited by that state's laws and by the Fourteenth Amendment, [the Court must] inquire whether the state long-arm statute authorizes the exercise of jurisdiction over the defendant. If it does, [the Court] must then determine whether the state court's exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment ...." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997) (citations omitted).  However, in Colorado, only one inquiry is necessary, as the Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124(1), "confer[s] the maximum jurisdiction permitted by the due process

clauses of the United States and Colorado constitutions," and its requirements are necessarily addressed under a due process analysis. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005) (en banc).

## III.    Dismissal under Fed. R. Civ. P. 12(b)(5)

Rule 12(b)(5) allows a defendant to defend against a claim based upon insufficiency of service of process. *Whitsell v. United States*, 198 F.3d 260, 1999 WL 987355, at *1 (10th Cir. Nov. 1, 1999) (unpublished) (citing Fed. R. Civ. P. 12(b)(5)). "A Rule 12(b)(5) motion is the proper vehicle for challenging" the sufficiency of the service of process, *i.e.,* "the mode of delivery or lack of delivery of the summons and complaint." *See* 5B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ. 3d* § 1353 (2008 Supp.). "In opposing a motion to dismiss for insufficient service of process, plaintiff bears the burden to make a *prima facie* case that he has satisfied statutory and due process requirements so as to permit the court to exercise personal jurisdiction over defendant." *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008).

That is, a plaintiff must demonstrate that the procedure employed by him has satisfied the requirements of the relevant portions of Rule 4 of the Federal Rules of Civil Procedure. *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987). Where a plaintiff does not meet this burden, a court may dismiss for failure to properly serve or it may quash the process without dismissing the action and give the plaintiff an opportunity to re-serve the defendant. *Pell v. Azar Nut Co., Inc.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983) ("when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant").

## <u>ANALYSIS</u>

The Court will begin by determining whether this Court has personal jurisdiction over

Defendant Jones.  If it does, the Court will next determine whether service was proper pursuant to Fed. R. Civ. P. 4.

## I.      Personal Jurisdiction

When evaluating personal jurisdiction under the due process clause, the Tenth Circuit conducts a two-step analysis.  At the first step, the court examines "whether the non-resident defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate being haled into court there.'"  *TH Agric. & Nutrition, LLC v. Ace European Group, Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007) (citations omitted).  If the defendant has sufficient contacts, the court then asks whether "exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances of a given case.  *Id.* (citations omitted).  "This analysis is fact specific."  *ClearOne Communs., Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010)).

The "minimum contacts" test may be met pursuant to either of two ways – general jurisdiction or specific jurisdiction.  First, if a defendant has "continuous and systematic general business contacts" with the forum state, it may be subjected to the general jurisdiction of the forum state's courts.  *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984).  Second, even in the absence of "continuous and systematic" contacts, a state's courts may exercise specific jurisdiction over a defendant that "purposefully directed" its activities at the state's residents, if the cause of action arises out of those activities.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985); *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) ("A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum,

9

and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.") (internal quotation marks and citation omitted).

In addition to examining Jones' minimum contacts with Colorado, the Court must analyze whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice" in this case. *ClearOne Communs., Inc.*, 643 F.3d at 764. This inquiry requires a determination of whether personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case. *Id.* In assessing reasonableness, a court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

A.   General Jurisdiction

General jurisdiction, unlike specific jurisdiction, subjects a defendant to a court's personal jurisdiction even when the controversy is not related to the defendant's activities in the forum. Specifically, "when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation." *Hall*, 466 U.S. at 414. However, these contacts must be "continuous and systematic." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996) (quoting *Hall*, 466 U.S. at 416).

According to the allegations in the Complaint, the Plaintiff in Colorado initiated contact with Jones in Florida by complaining about Defendant Peterman's conduct, and Jones simply ignored

10

him.  The Plaintiff has not established that Jones maintained offices, had bank accounts or other property, or was registered to do business in Colorado.   The evidence demonstrates that the only efforts Jones made to reach out to Colorado in this case were 2-3 visits he made in 2008 in conjunction with his employment with FedEx Freight.  Plaintiff does not dispute this information.  Certainly, Jones' visits themselves cannot be characterized as "continuous and systematic."  Thus, the Court recommends finding that Plaintiff has failed to make a prima facie showing that this Court has general personal jurisdiction over Defendant Jones.  *See SGI Air Holdings II LLC v. Novartis Int'l, AG*, 192 F. Supp.2d 1195, 1202-03 (D. Colo. 2002) (noting that where the only contacts are sending and receiving of electronic communications and the defendant has entered the forum state to discuss details of a contract, courts have found no personal jurisdiction).

> B.    Specific Jurisdiction

"Under the specific-jurisdiction requirement, a plaintiff satisfies the minimum-contacts standard by showing that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state, and (2) the litigation results from the alleged injuries that arise out of or relate to those activities."  *Bartile Roofs, Inc.*, 618 F.3d at 1160.  With respect to this question, Colorado's long-arm statute provides, in pertinent part,

> Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person and, if a natural person, such person's personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:
>
> (a) The transaction of any business within this state;
>
> (b) The commission of a tortious act within this state.

Colo. Rev. Stat. § 13-1-124(1).  Plaintiff's position may be reasonably construed as arguing that Jones either transacted business or committed tortious acts in Colorado within the meaning of the

statute.  The Court will address each argument in turn.

1.      *Transaction of Business*

"Purposeful availment requires actions by the Defendant which create a substantial connection with the forum state ... [the court] must examine the quantity *and* quality of Defendant's contacts with the forum state."  *Bartile Roofs, Inc.*, 618 F.3d at 1160 (internal quotations and citations omitted) (emphasis in original).

Here, the Plaintiff mentions nothing in his Complaint about any actions by Jones to create a substantial connection with Colorado.  Plaintiff mentions nothing about whether Jones' visits to Colorado concerned the Plaintiff or the allegations he makes in the Complaint.  In fact, Plaintiff does not allege that Jones made any type of contact with anyone in Colorado concerning Plaintiff's complaints of discrimination or harassment, or even concerning Plaintiff's employment at all.  Jones attests, "I did not have any contact with Colorado that involved Mr. Locke" (Declaration, ¶ 5, docket #24-1), and the Plaintiff responds with nothing rebutting such testimony.

However, in his affidavit in response to the motion, Plaintiff asserts that Jones' "periodic" visits to Denver and Rifle in connection with Jones' employment with FedEx Freight are sufficient to establish personal jurisdiction pursuant to *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and *Hanson v. Denckla*, 357 U.S. 235 (1958).

The Court disagrees.  As the Supreme Court found in *Hanson*, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253.  The *Hanson* Court concluded that the Florida state courts had no personal jurisdiction over a defendant trust company which had no office, transacted no business, held or

12

administered no trust assets and solicited no business in Florida.  *Id.* at 251.  The only contacts made came when the settlor moved to Florida and the trustee remitted the trust income to her in that state; thereafter, the settlor conducted trust administration with the trustee from Florida.  *Id.* at 251-52. The Supreme Court determined that, "[c]onsequently, this suit cannot be said to be one to enforce an obligation that arose from a privilege the defendant exercised in Florida."  *Id.* at 252.

Likewise, in this case, Jones attests that, in 2008, he made 2-3 visits to Denver and/or Rifle, Colorado in conjunction with his work at FedEx Freight.  However, these visits had nothing to do with the Plaintiff, and there is no indication Jones himself came to Colorado to negotiate with or solicit business from the residents of the State.  Colorado's long-arm statute provides that a defendant may be subject to the court's personal jurisdiction "concerning any cause of action *arising from* ... the transaction of any business within this state."  Colo. Rev. Stat. § 13-1-124(1)(a) (emphasis added).  To the extent that the Plaintiff's position may be construed as arguing Jones transacted business while in Colorado, he alleges nothing demonstrating that his claims arise from any such business.

The fact that Jones may be a corporate official of a company that transacts business in Colorado does not change the analysis.  "Jurisdiction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself ... [r]ather, jurisdiction over the representatives must be based on their individual contacts with the forum state."  *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009) (internal quotations and citations omitted).  Here, the liability of Jones is not predicated on his status as a corporate officer, but on his own personal act of allegedly ignoring complaints by Plaintiff of discrimination and harassment.  *See id.*

Therefore, this Court recommends finding that personal jurisdiction is not proper over Jones

based upon any "transaction of business" in Colorado.

### 2.    *Commission of Tortious Acts*

The Plaintiff argues that Jones' tortious conduct provides the required nexus to meet the minimum contacts test.  Jones counters that the conduct alleged for Plaintiff's Section 1981 claim does not constitute a "tort" within the meaning of the personal jurisdiction statute in Colorado.

Colorado's long-arm statute provides that a defendant "engaging in any act enumerated in this section ... whether or not a resident of the state of Colorado, either in person or by an agent" will be subject "to the jurisdiction of the courts of this state concerning any cause of action arising from [among others] ... the commission of a tortious act within this state."  Colo. Rev. Stat. § 13-1-124(1)(b).  Requirements of this statute may be satisfied when "when tortious conduct initiated in another state causes injury in Colorado."  *Wenz*, 55 F.3d at 1507.

Jones is correct that, currently, no controlling authority exists finding specifically that, under Colorado's long-arm statute, claims for violation of Section 1981 are deemed torts.  However, the Supreme Court has found, for purposes of determining whether Section 1981 claims were time-barred, that a state statute of limitations governing personal injuries, as opposed to that governing contract actions, is applicable.  *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661 (1987), *superceded on other grounds by statute*, 28 U.S.C. § 1658(a), *as recognized in Jones v. R.R. Donnelly & Sons, Co.*, 541 U.S. 369 (2004).[3]  In likening Section 1981 to 42 U.S.C. § 1983, the *Goodman* Court determined that Section 1981 is "part of a federal law barring racial discrimination, which ... is a fundamental injury to the individual rights of a person. ... That § 1981 has far-reaching economic

---

[3]Following *Goodman*, Congress enacted a four-year statute of limitations for causes of action arising under an Act of Congress after December 1, 1990.  28 U.S.C. § 1658.  However, such legislation did nothing to overturn *Goodman*'s holding that Section 1981 actions sound in tort.

consequences does not change this conclusion, since such impact flows from guaranteeing the personal right to engage in economically significant activity free from racially discriminatory interference." *Id.* at 661-62; *see also Wilson v. Garcia*, 471 U.S. 261, 266-68 (1985) (finding same for Section 1983 claims).

Thus, although the Plaintiff has provided no cases (and this Court has found none), specifically holding that race discrimination and a racially hostile work environment in violation of Section 1981 constitute the commission of tortious acts under Colo. Rev. Stat. § 13-1-124(1)(b), in light of the Supreme Court's findings in *Goodman* and *Wilson*, this Court concludes that such alleged violations fall within the meaning of § 13-1-124(1)(b).

The question now before the Court is whether Plaintiff demonstrates that Jones' alleged commission of race discrimination and creation of a hostile work environment (i.e., by ignoring or failing to respond to Plaintiff's complaints), which were undisputably initiated in Lakeland, Florida, caused injury in Colorado. *See Wenz*, 55 F.3d at 1507.

"Where a defendant's intentional, and allegedly tortious, actions, taken outside the forum, are expressly directed at causing a harmful effect within the forum state, a sufficient nexus exists between the defendant and the state so as to satisfy due process." *Archangel Diamond Corp.*, 123 P.3d 1187, 1198 (Colo. 2005) (quoting *D & D Fuller CATV Constr. Inc. v. Pace*, 780 P.2d 520, 525-26 (Colo. 1989)).  The forum state must be the focal point of both the tort and the harm suffered. *Id.* at 1199 (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)).  "Further, the injury in the forum state must be direct, not consequential or remote, and loss of profits in the state of plaintiff's domicile is insufficient to sustain long-arm jurisdiction over a nonresident defendant." *National Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1255 (D. Colo. 2000) (quoting *Amax*

*Potash Corp. v. Trans-Resources, Inc.*, 817 P.2d 598, 600 (Colo. App. 1991)).

In this case, the Plaintiff, a line haul driver, alleges that Jones, Manager of Line Haul Operations, "ignored" his complaints about Defendant Peterman, Service Center Manager, who allegedly made numerous insults and offensive jokes about his race. Plaintiff further alleges that, "[a]t no time was [sic] FedEx procedures followed to cure my allegation of racial remarks by Defendant Peterman." Amended Complaint, ¶ 20, docket #18-1. These allegations, taken as true, show that Defendant FedEx Freight's procedures required managers to respond (in some way) to complaints of race discrimination or harassment. Plaintiff further asserts that Jones' "discriminatory practices" have caused him emotional distress including, "pain, humiliation, and embarrassment [and] mental anguish." *Id.*, ¶ 29.

A manager's failure to respond to an employee's complaints of racial harassment may constitute race discrimination under 42 U.S.C. § 1981. *See Lucero v. Beth Israel Hosp. & Geriatric Ctr.*, 479 F. Supp. 452, 454 (D. Colo. 1979); *see also Tademy v. Union Pacific Corp.*, 614 F.3d 1132, 1152 (10th Cir. 2008) (the elements necessary to prove a hostile work environment claim under § 1981 include "(1) the acts alleged by [plaintiff] are part of the same hostile work environment and involve racial animus; (2) the harassment was sufficiently severe to alter the terms, conditions or privileges of employment; and (3) ... [defendant]'s response to the alleged harassment was inadequate.").

Many cases addressing specific jurisdiction involve factual scenarios in which a defendant is alleged to have committed some affirmative action directed at the plaintiff in the forum state. *See, e.g., Calder*, 465 U.S. at 788-89 (allegedly libelous article written by two Florida employees of National Enquirer was directed at, and impugned the reputation of, a California resident); *ClearOne*

16

*Communs., Inc.*, 643 F.3d at 763-64 (Connecticut defendant's actions in visiting Utah twice, negotiating a leasing agreement with Utah plaintiff and exchanging communications with plaintiff were directed at, and caused injuries to, Utah plaintiff); *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1358 (10th Cir. 1990) (California employee had minimum contacts with Kansas by his regular communications with Kansas employer and negotiation of employment contract with president of employer); *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 237 (Colo. 1992) (defendant's alleged misrepresentations made in an advertisement and during telephone calls with the Colorado plaintiff were sufficient minimum contacts with the state). Here, the allegations involve a Defendant who did nothing in response to Plaintiff's complaints; however, by alleging that Jones "ignored" his complaints, the Plaintiff essentially asserts that Jones knew of the complaints, but chose not to respond to them. The word, "ignore" is defined as "to refuse to take notice of." *See* Merriam-Webster, http://www.merriam-webster.com (last visited Aug. 23, 2012). Jones' alleged action of "ignoring" Plaintiff's complaints is, thus, directed at the Plaintiff and, as such, the Court must conclude that the tort was committed in Colorado. Further, the injuries allegedly suffered with respect to Plaintiff's hostile work environment claim, including emotional distress and mental anguish, occurred in Colorado where the Plaintiff was located. In other words, the Plaintiff was the focal point of both the tort and the injury.[4]  *See Archangel Diamond Corp.*, 123 P.3d at 1200.

---

[4] This finding considers the Tenth Circuit's opinion in *Dobbs v. Chevron U.S.A., Inc.*, 39 F.3d 1064, 1068 (10th Cir. 1994) in which the court affirmed a trial court's holding that derogatory comments made by out-of-state employees about the Plaintiff while they were in the forum state were insufficient minimum contacts to invoke personal jurisdiction. The Court finds *Dobbs* distinguishable in that the Tenth Circuit characterized the comments as "minor" and "unspecified," which likely would be insufficient to cause an injury for claims of intentional interference and civil conspiracy. Here, the alleged act by a manager of "ignoring" Plaintiff's claims of racial harassment itself can raise an inference of discrimination pursuant to Section 1981.

Accordingly, the Court recommends finding that the Plaintiff has met his minimal burden to demonstrate a *prima facie* showing that Jones allegedly committed a tort in Colorado, which is necessary to satisfy the requirements of Colo. Rev. Stat. § 13-1-124(1)(b).

C.      Fair Play and Substantial Justice

Having concluded that Plaintiff has met his burden to satisfy Colorado's long-arm statute, the Court must next determine whether the exercise of specific personal jurisdiction over Jones is reasonable.

A determination of whether the exercise of jurisdiction is so unreasonable as to violate fair play and substantial justice requires an analysis of the five factors set forth in *ClearOne Communs., supra*. "The strength of these factors sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. Conversely, the factors may be so weak that even though minimum contacts are present, subjecting the defendant to jurisdiction in that forum would offend due process." *OMI Holdings, Inc.*, 149 F.3d at 1095-96 (citations omitted).

With respect to the first factor, Jones asserts nothing in his Declaration concerning any burden, but argues in the present motion that he would suffer a "tremendous" burden by defending the lawsuit in Colorado, since he "does not have an office or any other presence in Colorado" and "lives half-way across the country."  Motion, docket #24 at 9.  The Court is not convinced.  Jones "bears the burden of presenting a *compelling* case that the presence of some other considerations would render jurisdiction unreasonable."  *ClearOne Communs., Inc.*, 643 F.3d at 764 (emphasis added).   Here, Jones is represented by counsel in Colorado, and electronic filing and communications have greatly simplified out-of-state litigation. *See Hollander v. Zito*, 11-cv-00499-

18

MSK, 2011 WL 5834688, at *3 (D. Colo. Nov. 21, 2011).  The Court finds that the first factor weighs in favor of finding personal jurisdiction over Jones reasonable.

Second, Colorado would likely have a strong interest in resolving an action involving alleged race discrimination against one of its residents.  In addition, the Plaintiff, who is proceeding *pro se* and *in forma pauperis* in this matter, certainly would be best served by adjudicating his claims in Colorado.  Thus, the second and third factors weigh in favor of a reasonableness finding.

There is no evidence or argument concerning the remaining factors – the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies – but the Court perceives nothing regarding these factors that would render the exercise of jurisdiction over Jones unreasonable.  Therefore, the fourth and fifth factors are neutral.

In weighing the required factors, the Court concludes that personal jurisdiction over Jones is reasonable in light of the circumstances in this case.  Accordingly, the Court recommends finding that, under these circumstances and the prevailing case law, Jones' contacts with Colorado are sufficient to establish specific jurisdiction necessary to hale Jones into Colorado.

## II.    Personal Service

Service of process is governed by Fed. R. Civ. P. 4.  An individual may be served within a judicial district of the United States by following state law where the district court is located or where service is made, or by (1) delivering copies of the summons and complaint to the individual personally, (2) leaving copies at the individual's dwelling or usual place of abode with someone of suitable age who lives there, or (3) delivering copies to an agent authorized by appointment or by law to receive service of process.  Fed. R. Civ. P. 4(e).  In defending a motion to dismiss for

insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5), the "plaintiff bears the burden

to make a *prima facie* case that he has satisfied statutory and due process requirements so as to

permit the court to exercise personal jurisdiction over defendant." *Fisher*, 531 F. Supp. 2d at 1260.

Plaintiff contends that Jones' attorney is an "agent authorized by law" within the meaning

of Rule 4(e)(2)(C), and that, since the attorney also represents Defendant FedEx Freight and was

properly served with the summons and complaint, Jones likewise was properly served.

Jones counters that Plaintiff has failed to serve him personally as required by Rule 4(e).

First, under Colorado law, a plaintiff may serve an individual at their usual workplace, with the

person's secretary, administrative assistant, bookkeeper or managing agent. Colo. R.  Civ. P. 4(b).

Jones contends that the Henderson, Colorado facility is not his "usual workplace," and that he never

had a secretary or other staff authorized to accept service in Henderson.  Further, Jones asserts that

he was never personally served with the summons or complaint, nor were they served at his home

in Ozark, Arkansas.  With  respect to Plaintiff's argument concerning Jones' attorney, Jones states

"if Plaintiff also is arguing that service of Jones was adequate because counsel ultimately obtained

a copy of the Complaint, his argument clearly fails under Rule 4(e)."  Reply, docket #37 at 2, n. 1.

In this case, the Plaintiff was granted leave to proceed *in forma pauperis* pursuant to 28

U.S.C. § 1915.  Order, docket #4.  Accordingly, under § 1915(d), "[t]he officers of the court shall

issue and serve all process, and perform all duties in such cases."  A *pro se* plaintiff proceeding *in*

*forma pauperis* is entitled to rely on the Clerk of the Court and/or U.S. Marshal for service of the

summons and complaint, but only insofar as the court is provided proper contact information for the

defendant to be served.  *Calbart v. Denver Sheriff Dep't*, No. 10-cv-01385-LTB-CBS, 2011 WL

805765, at *3 (D. Colo. Feb. 8, 2011).

Here, a Deputy Clerk of this Court certified that she arranged service of process with the United States Marshal Service  for all Defendants, including Defendant Jones.  Certificate of Service, docket #7.  A deputy U.S. Marshal then attempted to serve the Defendants at Federal Express, 9789 E. 99th Place, Henderson, CO 80640.  *See* docket ## 9, 10.  With respect to Jones, Aaron Hollis, Service Center Manager at the Henderson facility, received service of the Summons and Complaint (docket #9); with respect to the other individual Defendants, Mr. Hollis notified the Marshal that they were no longer employed with the company (docket #10).  It appears from the docket that there have been no further attempts to serve Jones.

Although unclear, Jones appears to argue that his counsel is not authorized to accept service on his behalf.  With that said, and because the Plaintiff does not rebut Jones' testimony concerning lack of personal service, the Court must conclude that Jones has not been served in accordance with Fed. R. Civ. P. 4(e).  However, this conclusion does not automatically lead to dismissal.  The Court also finds that circumstances justify recommending an extension of the service period under Fed. R. Civ. P. 4(m) and allowing service of Jones to be attempted at his correct address.  *See Pell*, 711 F.2d at 950 n.2 ("when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant").

Here, the burden of properly serving Jones at the provided address was on the Court.  Until Jones filed his original motion to dismiss on April 30, 2012, the Plaintiff and the Court assumed Jones was properly served by the acceptance of a "manager" at the Henderson facility of the summons and complaint attempted to be served personally and specifically upon Jones.  Docket #9.  Service upon Jones then became a disputed issue and, until resolved, Court personnel would make no further attempts to serve Jones.  Therefore, the Court recommends that the District Court find

good cause to extend the period for service under Rule 4(m), allow service upon Defendant Jones at his correct address, and deny Jones' motion to dismiss pursuant to Rule 12(b)(5).

<u>**CONCLUSION**</u>

The Plaintiff has met his minimal burden of demonstrating a *prima facie* showing of this Court's specific personal jurisdiction over Defendant Jones, and has met his burden to show that the circumstances of this case justify attempting service of process at Jones' correct address. Accordingly, the Court RECOMMENDS that Defendant Jon S. Jones' Motion to Dismiss Plaintiff's First Amended Complaint [filed June 6, 2010; docket #24] be **DENIED**.

Respectfully submitted this 31st day of August, 2012, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge